UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JAMES A. ANDERSON,

Petitioner,

v.

RICHARD L. STIFF, Warden

Respondent.

Civil No. 00-619 (JRT/ESS)

**REPORT AND RECOMMENDATION**

THIS MATTER is before the undersigned United States Magistrate Judge on Petitioner James Anderson's pro se application for habeas corpus relief under 28 U.S.C. § 2241 [Docket No. 1] and motion for appointment of counsel [Docket No. 2]. On March 15, 2000, the undersigned issued an order requiring Respondent Richard Stiff to show cause why the writ should not be granted [Docket No. 3]. On April 18, 2000, Respondent submitted a Memorandum requesting that Petitioner's application for habeas relief be denied. [Docket No. 7]. On May 2, 2000, Petitioner filed a Response to Respondent's Memorandum in Opposition to Writ of Habeas Corpus. [Docket No. 10]. On August 9, 2000, the undersigned issued an Order directing Respondent to forward documents and correspondence to the sentencing judge, Chief Judge John C. Shabaz of the Western District of Wisconsin, so as to further develop the record to include his stated intent on sentencing and any opposition to granting Petitioner a *nunc pro tunc* designation. [Docket No. 11]. The Court received a responsive letter from Chief Judge Shabaz dated August 30, 2000, at which time the matter was considered fully submitted for consideration.

These proceedings have been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons stated below, it is recommended that



FILED NOV 0 7 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

the petition for writ of habeas corpus be denied.

## I. PROCEDURAL HISTORY

### A. Petitioner's Sentencing in Federal and State Courts and Time Subsequently Served

Petitioner asserts that the Bureau of Prisons ("BOP") has erroneously computed his sentence by failing to credit time served in a Minnesota state correctional facility toward his federal sentence. The applicable facts are set forth below.

On June 15, 1995, Petitioner committed the federal offenses of Interstate Transportation of Stolen Goods and a Felon in Possession of Firearms, but was not arrested. See Presentence Report ("PSR") at 3, Attachment C to Dugan Decl. Before Petitioner was brought in on the federal charges, he was arrested by Minnesota state authorities on June 23, 1995, and charged with Aiding and Abetting Felony Burglary. See Dugan Decl. ¶5. Petitioner was transported to Washington County Jail where he remained.

On November 1, 1995, Petitioner was released from Washington County Jail to the custody of the United States Marshal's Service for a scheduled appearance on his federal charges before Chief Judge Shabaz of the United States District Court for the Western District of Wisconsin. See Dugan Decl. ¶5; PSR at3, Attach. C. Petitioner pled guilty, and on April 4, 1996, Chief Judge Shabaz sentenced him to a 146 month prison term See Dugan Decl. ¶5; Judgment in a Criminal Case, Attach. B; PSR, Attach. C. After sentencing, on April 8, 1996, Petitioner was returned to the Washington County Jail. See Dugan Decl. ¶5. It is undisputed that at the time of sentencing, Petitioner had not been tried, convicted, or sentenced in the pending Minnesota state case.

On April 10, 1996, Petitioner was convicted in State Court, in Washington County, Minnesota, and received a fifty-four month sentence to be served concurrently with his federal sentence. See Dugan Decl. ¶6, Minnesota Correctional Facility Case Summary, Attach. D; Felony

Plea and Sentencing transcript, Attach. E.

On July 10, 1996, Petitioner was erroneously released to the U.S. Marshal's service to begin serving his federal sentence. See Dugan Decl. ¶7. He remained in federal custody for six days. Id. Petitioner was then returned to Minnesota custody to finish his fifty-four month state sentence. Those six days were subsequently credited toward Petitioner's federal sentence. See Dugan Decl. ¶3, Inmate Information Data at 6, Attach. A.

On August 12, 1998, Petitioner completed his state sentence and was released into the U.S. Marshal's Service to begin serving his federal sentence at FCI Waseca. See Dugan Decl. ¶8.

B. Petitioner's Exhaustion of Administrative Remedies

On October 1, 1999, Petitioner sought administrative relief with the BOP, seeking credit for time served dating from June 23, 1995, the date of his state arrest, to August 12, 1998, the date he was received at FCI Waseca. See Request to Staff Attached to Pet. The BOP informed Petitioner that while he would receive credit for the six day he was in actual federal custody toward his federal sentence, there would be no credit awarded for time spent serving his Minnesota sentence. Id.

Petitioner then filed an administrative request to the Warden at FCI Waseca, requesting jail credit for time served for June 23, 1995, through August 12, 1998. See Institution Administrative Remedy request attached to Pet. Petitioner argued that BOP policy statement 5160.03 expressly authorizes the BOP to retroactively designate the state prison as the place for all or part of the federal sentence. Id. Petitioner alternatively argued that his federal sentence should be deemed to commence on July 10, 1996, because he was received that day by federal authorities to commence his federal sentence, even if erroneously. Id. The Warden denied Anderson's request to have Petitioner's federal sentence commence on July 10, 1996, because Petitioner's release to federal authorities had been erroneous. Id. The Warden further declined to grant credit for time Petitioner

served toward his state sentence because"[c]ontact with federal probation regarding this matter confirmed it was the sentencing judge's intention that the federal sentence be served consecutive to the state sentence." Id.

On November 8, 1999, Petitioner appealed the Warden's decision to the Regional Director. See Regional Administrative Remedy Request Attached to Pet. His request for *nunc pro tunc* designation of the Minnesota Department of Corrections as the place of service of his federal sentence was denied. Id.

On December 18, 1999, Petitioner appealed the decision of the Regional Director to the Administrator of the National Inmate Appeals and was denied, thus exhausting his administrative remedies with the BOP. See National Inmate Administrative Remedy Appeal Attached to Pet.

C. Petitioner's Habeas Petition

Petitioner has filed the present application for habeas corpus relief under 28 U.S.C. § 2241. Petitioner identifies seven grounds for relief. Petitioner argues:

(1) that the BOP has effectively converted his state sentence which was to run concurrent with the federal sentence into a consecutive sentence;

(2) that the BOP's refusal to effectuate the state sentence as a concurrent sentence violates the doctrine of dual sovereignty;

(3) that a downward departure is warranted because the timing of the federal sentence resulted in a lost opportunity to serve the state term of imprisonment concurrently with a federal term;[1]

1. This Court properly reviews the BOP's denial of Petitioner's request. To the extent Petitioner seeks modification of his federal sentence, the proper way to seek such relief is by a motion to modify or correct a sentence pursuant to § 2255.

(4) that the BOP abused its discretion in failing to grant Petitioner credit for time spent in state custody;

(5) that the BOP erroneously interpreted the sentencing judge's silence as to Petitioner's later sentence as the intent to impose a consecutive silence;

(6) that the BOP has initiated an arbitrary interruption of the Petitioner's sentence; and

(7) that the Petitioner should get credit for time served in state custody for same offense conduct. [Docket No. 1].

For the reasons discussed below, the habeas petition is denied.

## II. DISCUSSION

### A. Did the BOP correctly compute Petitioner's federal sentence?

#### 1. The Commencement of Petitioner's Federal Sentence

Petitioner contends in his May 2, 2000 brief [Docket No. 10] that his federal sentence began on July 10, 1996, when he was erroneously turned over to the U.S. Marshal's service to begin serving his federal sentence. Petitioner further claims that because he is entitled to an uninterrupted sentence, the federal sentence should be considered to run from July 10, 1996, with no tolling registered for the period after the error was discovered and he was returned to complete the service of his Minnesota state sentence.

Respondent argues that Petitioner's federal sentence should not be deemed commenced because it was the result of error. Moreover, Respondent argues that the mistake was discovered after only six days, that Petitioner was given credit for those six days toward his federal sentence, and thus there was no prejudice to Defendant. Respondent asserts that the federal sentence commenced actually on August 12, 1998, when Petitioner completed serving his state sentence and was turned over to the U.S. Marshal's Service.

There is legal authority to support Petitioner's argument that the federal sentence commenced on July 10, 1996, the date he was erroneously released to the U.S. Marshal's service. 18 U.S.C. § 3585(a) governs the date on which a federal sentence commences. The statute reads in pertinent part:

> (a) Commencement of Sentence.–A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a). A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as having their ordinary, contemporary, common meaning. See Beef Nebraska, Inc. v. United States, 807 F.2d 712, 716 (8th Cir.1986). Applying a plain meaning interpretation to 18 U.S.C. § 3585(a), Petitioner's federal sentence should be deemed to commence on July 10, 1996, when he was received by U.S. Marshals to serve his federal sentence.

At least one other court has applied a plain meaning interpretation of 18 U.S.C. § 3585(a) in holding that acceptance of a prisoner by federal officials, even if erroneous, nonetheless triggers the commencement of the federal sentence. In Luther v. Vanyur, 14 F.Supp.2d 773, (E.D. N.C. 1997), the petitioner was transferred from state custody by the U.S. Marshal to a BOP facility. The transfer was made in error and the petitioner should have remained in state custody until the state sentence was completed. The error was not discovered for three years, at which time the petitioner was returned to state custody to complete the state sentence. The court held that according to the plain language of 18 U.S.C. § 3585(a), the petitioner's federal sentence commenced when he was received in custody by the U.S. Marshal to await transportation to the BOP detention center.

Like the court in Luther v. Vanyur, this Court must heed the plain meaning of the statute, particularly in the absence of any evidence that the plain meaning reading in any way subverts Congressional intent. Under a plain meaning reading, Petitioner's sentence commenced on July 10,

1996. The BOP acknowledged this to some extent by granting Petitioner credit toward his federal sentence for the six days he was in their custody.

Respondent has argued that after a defendant is sentenced, it falls to the BOP, not the district judge, to determine when a sentence is deemed to commence. See Respondent's Mem. in Opposition to Pet. For Writ of Habeas Corpus at 6. While the Court recognizes this principle as correct, a reading of Pineyro v. U.S., 112 F.3d 43, 45 (2d. Cir. 1997), cited by Respondent, reveals that in that case the Fifth Circuit was addressing the propriety of the *sentencing* judge's prospective recommendation that the BOP credit a prisoner with time spent in state custody. The cited authority in no way lessens the authority of this Court to find that petitioner's sentence commenced according to the governing statute, even if that commencement was the result of error.

2. Interruption of Petitioner's federal sentence

The question next becomes whether the federal sentence continued to run upon Petitioner's timely return to state custody, or if the federal sentence was interrupted during the period Petitioner remained in state custody.

Cases relied upon by petitioner for the proposition that, once commenced, a federal sentence must be served continuously and without interruption, are cases where a prisoner was released from custody, either by mistake or upon execution of a writ habeas corpus ad prosequendum to another sovereignty, and where no effort was made to correct the mistake or reacquire custody of the prisoner for a substantial period of time. In those circumstances, where the prisoner has been freed or has a reasonable expectation of freedom and has, or has attempted to, reestablish himself in the community, and where the interruption of his sentence is through no fault of his own, it has been held that his sentence continues to run although not in federal custody. See White v. Pearlman, 42 F.2d 788 (10th Cir. 1930); Lanier v. Williams, 361 F.Supp. 944 (E.D.N.C.1973).

However, there are cases that conclude there is no requirement that a federal sentence run uninterrupted after it has begun. After a review of the legislative history of section 3568, the precursor to 18 U.S.C. § 3585(a), the District of Columbia Circuit in United States v. Liddy, 166 U.S.App.D.C. 289, 510 F.2d 669, 674 (1974), cert. denied, 420 U.S. 980, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975), concluded that the section is designed primarily to establish a firm date for commencement of a sentence and not to impose a rigid method of sentence calculation. In Liddy, the court of appeals upheld the district court's interruption of the appellant's federal sentence to permit incarceration for civil contempt after the appellant refused to testify under immunity before a grand jury. See also Anglin v. Johnston, 504 F.2d 1165 (7th Cir. 1974), cert. denied, 420 U.S. 962, 95 S.Ct. 1353, 43 L.Ed.2d 440 (1975). Other courts have held that interruption of a federal sentence is consistent with the consecutive nature of the sentence imposed and the authority of federal and state authorities to make custody arrangements. See Smith v. Keohane, 491 F.Supp. 626, 628 (W.D. Ok. 1979); Cox v. U.S., 551 F.2d 1096, 1098 (7th Cir. 1977). Finally, even in the context of an erroneous release, a convicted person will not be excused from serving his sentence merely because someone in a ministerial capacity makes a mistake with respect to its execution. Several additional factors must be present before relief will be granted the result must not be attributable to the defendant himself; the action of the authorities must amount to more than simple neglect; and the situation brought about by defendant's release and his reincarceration must be "unequivocally inconsistent with 'fundamental principles of liberty and justice.' " See Piper v. Estelle, 485 F.2d 245, 246 (5th Cir. 1973).

In the present case, Petitioner's release was the matter of a simple administrative mistake that was discovered after six days. Petitioner was given credit toward his federal sentence for those six days so that he would not bear the weight of the error. This was not a case like Luther v. Vanyur

where the prisoner remained in federal custody for more than three years. Nor does this case resemble the erroneous release cases where prisoners were released from all custody for substantial periods of time. The present case much more closely resembles Smith v. Keohane, where the interruption of the federal sentence was allowed during the completion of petitioner's state court sentence because to do so was deemed consistent with the initial consecutive sentence. Petitioner was not prejudiced by the erroneous transfer in this case, and should not therefore be allowed double credit toward his sentences because of a quickly discovered mistake. It was the intent of the sentencing judge that the federal sentence be served consecutive to the sentence subsequently imposed by the state court. See Correspondence of John C. Shabaz, dated August 30, 2000. Therefore, the BOP was correct in its determination that Petitioner is not due credit for his federal sentence for the period after he was returned to state custody. This Court finds that Petitioner's federal sentence was interrupted upon his return to state custody.

### B. **Did the BOP abuse its discretion in failing to designate the Minnesota Department of Corrections *nunc pro tunc* designation as the place of service for Petitioner's federal Sentence?**

Petitioner contends that he is entitled to credit toward his federal sentence for time previously spent in the custody of the state of Minnesota. Given the facts of the record, the Court is satisfied that the Bureau of Prisons, ("BOP"), could grant the relief that Petitioner is seeking. In other words, the BOP has the discretionary authority to grant Petitioner a *nunc pro tunc* designation. See Barden v. Keohane, 921 F.2d 476, 483 (3d Cir. 1991); McCarthy v. Doe, 146 F.3d 118, 123 (2d Cir. 1998); United States v. Croft, 450 F.2d 1094, 1099 (6th Cir. 1971). Thus, the substantive issue is whether the BOP properly exercised its discretion, or abused that discretion, when it declined Petitioner's request for *nunc pro tunc* designation of the state prison as the facility of service of his federal

sentence.

The BOP has adopted a Program Statement, P.S. 5160.03, which is to be applied in cases where it is asked to exercise its discretionary authority to "backdate" the commencement of a prisoner's sentence. In cases such as this one, P.S. 5160.03 requires the BOP's Regional Inmate Systems administrator, ("RISA"), to "send a letter to the sentencing District Judge, along with the inmate's request, inquiring whether the court has any objections." The Program Statement properly recognizes that the federal sentencing District Judge's position should be given great weight when the BOP is deciding whether to grant or deny a petitioner's request for a backdated commencement date. It is important to know, if possible, what the federal sentencing District Judge would have done, if he or she had known that a related state court sentence would later be imposed. In the present case, the BOP did not initially send a letter directly to the sentencing judge, but rather relied on the representation by United States Probation Officer Jack R. Verhagen that the sentencing judge had not intended that the federal sentence be served concurrently with the state sentence.

The record in the present case has been developed to include a letter from United States District Court Judge John C. Shabaz, the sentencing judge of record. See Correspondence of John C. Shabaz, dated August 30, 2000. In the letter, Judge Shabaz indicates that it was his intention to sentence Defendant consecutive with his state sentence. Id. He indicates that it was not his intention that the federal sentence be served concurrently with the state sentence. Id.

Under 18 U.S.C. § 3621(b), the BOP has broad discretion in deciding whether a *nunc pro tunc* designation is granted. In the present case, the BOP has carefully considered Petitioner's requests throughout the administrative process, with attention to both applicable case law and the representations of the sentencing judge. The record now reflects that the BOP was correct regarding the intent of the sentencing judge. Under these circumstances, the Court finds that the BOP acted

within its discretion in denying Petitioner's request for a *nunc pro tunc* designation.

### C. **Can the BOP refuse to effectuate Petitioner's state sentence as concurrent to the federal sentence?**

Defendant argues that the BOP has effectively converted the state sentence which was to be served concurrently with the federal sentence into a consecutive sentence. Defendant argues that the failure to give effect to the state court judge's sentence represents a violation of the doctrine of dual sovereignty.

The first bedrock principle that we must recognize in this case is that where an individual has committed crimes against two sovereigns, the issue of who has jurisdiction over him is a matter of comity between the two sovereigns. See Jeter v. Keohane, 739 F.2d 257, 258 (7th Cir.1984) (citing Ponzi v. Fessenden, 258 U.S. 254, 262, 42 S.Ct. 309, 66 L.Ed. 607 (1922)). As to the federal government, the authority to exercise this comity rests with the Attorney General, and an individual may not complain about her decisions. See Poland v. Stewart, 117 F.3d 1094, 1098 (9th Cir.1997) ("It is the Attorney General's job to exercise the authority of the United States over federal prisoners. If she chooses to leave [an individual] in the custody of the State ..., neither [the individual] nor this court is in a position to say she lacks the authority under the Constitution to do so."); see also Bowman v. Wilson, 672 F.2d 1145, 1154 (3d Cir.1982) (" '[t]he exercise of jurisdiction over a prisoner who has violated the law of more than one sovereignty and the priority of prosecution of the prisoner is solely a question of comity between the sovereignties which is not subject to attack by the prisoner.' ") (quoting Derengowski v. United States, 377 F.2d 223, 224 (8th Cir.1967)) (alteration by quoting court). A corollary to this principle is that a determination as to concurrence of sentence made by one sovereign does not bind the other. A prisoner may not, by agreeing with the state authorities to make his sentence concurrent with a federal sentence, " 'compel the federal government

to grant a concurrent sentence.' " Pinaud v. James, 851 F.2d 27, 30 (2d Cir.1988) (quoting United States v. Sackinger, 704 F.2d 29, 32 (2d Cir.1983)); see also Del Guzzi v. United States, 980 F.2d 1269, 1270 (9th Cir.1992) (state judge ordering sentence concurrent with federal sentence and recommending immediate transport to federal authorities has no power to compel federal government to grant concurrent sentence or credit time served in state prison). Indeed, under the prior statutory scheme, we interpreted the authority of the Attorney General to designate the place of confinement of federal prisoners to be broad enough that a federal court's determination as to concurrence of a federal sentence with a prior state sentence was not binding on the Attorney General; such a federal sentence was a recommendation to the Attorney General that need not be heeded. See United States v. Aleman, 609 F.2d 298, 309 (7th Cir.1979); United States v. Myers, 451 F.2d 402, 403 (9th Cir.1972). Therefore, Petitioner's argument must fail. The state court's designation of his state sentence as concurrent with his prior federal sentence created no obligation on the Attorney General to provide him with credit for time served in the state prison.

**D. Do Petitioner's state and federal sentences cover same offense conduct?**

Petitioner contends that he should get credit toward his federal sentence for time served in state custody because the state and federal charges stem from the same illegal conduct. Petitioner was charged by the state of Minnesota with Aiding and abetting Felony Burglary He was charged by federal authorities with Interstate transportation of Stolen Goods Having an Aggregate Value of $5000.00 or More and Felon in Possession of a Firearm Which Had Traveled in Interstate Commerce.

Fontaine v. United States, 434 F.2d 1310, 1311 (5th Cir.1970) establishes the proposition that credit is given on a federal sentence for time spent in state custody if the state custody was based upon the same offenses or acts for which the federal sentence was imposed. However, Fontaine held that a petitioner who had been convicted of transporting a stolen automobile in interstate commerce was

not entitled to credit for time spent in state custody on a conviction of theft of such automobile. Id. at 1310.

Fontaine is analogous to the instant case because the petitioner in Fontaine argued that his federal sentence should be credited with the three years he had served on the Louisiana state conviction for theft of the same auto which he transported in interstate commerce, because the separate convictions were based on the same acts. The Fifth Circuit distinguished the federal and state offenses:

> It is true that the same automobile was involved in both offenses, but it is with this incidental fact the sameness ends. The Louisiana offense of auto theft was based on the defendant's admitted actions in taking possession of a car that was not his. The State crime was complete at the moment of wrongful appropriation, even if the vehicle moved one-half block. On the other hand, the federal offense of knowingly transporting a stolen vehicle across state lines did not occur until the automobile was taken across a state line and it was in no way dependent upon the theft of the automobile by the defendant.

Id. at 1311. The state charge was therefore not sufficiently connected with the federal charge for purposes of crediting the state time on the prisoner's sentence under § 3568. See also Emig v. Bell, 456 F.Supp. 24 (D.Ct.1978) (finding that federal conviction for making false statements on a loan application and state conviction for check fraud do not constitute "same charges" under § 3568); Watson v. Henderson, 350 F.Supp. 240 (N.D.Ga.1972) (finding that prisoner was not entitled to credit on subsequent federal sentence for time served in state sentence because forgery conviction for which prisoner was in state custody was a different crime than federal conviction for interstate transportation of forged securities).

That the same stolen goods established Petitioner's state and federal convictions does not render them sufficiently connected for the purpose of crediting his federal sentence under § 3585. The acts necessary to constitute the federal offenses required travel in interstate commerce, that Petitioner

have a prior felony conviction, and that the weapon in question had been shipped in interstate commerce. These three elements were not required by the Minnesota charge. Accordingly, this Court finds that petitioner's state and federal offenses are not sufficiently connected pursuant to § 3585 to require credit towards his federal sentence for his time served in state custody.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

1. The petition for writ of habeas corpus [Docket No. 1] be **denied**;

2. This action be **DISMISSED WITH PREJUDICE** as to all claims except Petitioner's third argument for downward departure which may be brought in the appropriate § 2255 proceeding.

Dated: November 7, 2000

E. S. SWEARINGEN
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.